RICHARDSON v. CHENEY.

(Supreme Court, Appellate Division, First Department. November 3, 1911.)

1. BANKS AND BANKING (§ 80*) — RECEIVERS ON INSOLVENCY — ACTIONS AGAINST.

Plaintiff, a depositor with the E. bank, presented to it for discount two notes payable to his order—one for $2,000 and the other for $4,000— and the bank discounted the notes and credited plaintiff with $6,000, and plaintiff at the same time drew a check for $2,000 to the bank's order payable at the M. bank, and agreed not to draw out $2,000 from the $6,000 credited to him until payment of the notes. The acceptance of the $2,000 check was equivalent to certification, leaving the E. bank's balance with the M. bank $2,000 more while the check was outstanding than it was on the books of the E. bank. The check was thereafter paid by the M. bank and the amount credited by the E. bank to plaintiff's account without his knowledge, and before the notes were due, and he did not draw thereon before the bank was taken possession of by the Superintendent of Banks. *Held*, that the E. bank remained plaintiff's debtor as to the $2,000, so that, while the bank still owes him that sum, he cannot recover it in an action against the Superintendent of Banks, but must file his claim along with the other general creditors.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 80.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 56 Hun. 640.

2. BANKS AND BANKING (§ 77*)—SUPERINTENDENT OF BANKS—LIABILITY IN TORT.

    If the crediting of the $2,000 to plaintiff's account without notice to him and before the notes were due is considered as a conversion of the check, the Superintendent of Banks is not liable therefor; he having taken charge of the bank after that time.

    [Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 77.*]

    Ingraham, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by William P. Richardson against Orion H. Cheney, as Superintendent of Banks of the State of New York. From a judgment for plaintiff, defendant appeals. Reversed and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Rollins & Rollins (Roswell S. Nichols, of counsel; Edward A. Craighill, Jr., on the brief), for appellant.

Armstrong & Brown (Pierre M. Brown, of counsel), for respondent.

CLARKE, J. Plaintiff was a depositor with the European-American Bank. On May 26, 1910, he presented to the bank for discount two notes payable to his order, one for $2,000 due August 24 and the other for $4,000 due August 25, 1910. The bank discounted the notes, and plaintiff, who had no substantial deposit at the time, was credited with $6,000, and at the same time he drew a check for $2,000 to the order of the European-American Bank, and delivered it to the cashier. Said bank accepted the check, payable at the Mercantile National Bank. The cashier testified that this was equivalent to certification—that is, the amount of the check was charged to plaintiff's account—the effect being that the bank's balance with the Mercantile National Bank was $2,000 more at all times than it was on the books of the European-American Bank while this check stood out, because it had not been presented. On the 20th of July this check was paid by the Mercantile National Bank to the European-American Bank and the amount thereof was on said day credited by said bank to the plaintiff's account. Plaintiff did not know this. He had drawn out all of his account except $1.30 before the Superintendent of Banks took possession of the European-American Bank on August 6, 1910, and testified that he did not draw this $2,000 because he "did not know it was there." Plaintiff did not file a claim as creditor against the bank. His attorneys wrote a letter to the attorneys of the defendant, the Superintendent of Banks, making a demand for the $2,000. That demand not having been acceded to, this suit was brought. The notes were paid at maturity, and so after the Superintendent took charge of the bank.

Whatever the transaction was between the plaintiff and the bank, whether the delivery of the check was as collateral security to the notes discounted, or whether, as one of the witnesses testified, it was as a guaranty for balance, the fact is that the bank agreed to and did

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

discount the notes upon the agreement of the plaintiff that he would not draw out $2,000 from the $6,000 put to his credit upon said discount, until the maturity and payment of the notes, and made this promise effective by delivering to the bank his check to its order for $2,000. When the bank credited the plaintiff's account with $6,000, the relation of debtor and creditor was created. When plaintiff agreed not to make use of $2,000 of that credit for a specified period and unless a particular event happened, he did not create a trust fund for his own benefit, but made a promise for the benefit, security, and protection of the bank. It had received no money from him, but had given him a credit, $4,000 of which was immediately available and $2,000 not immediately available. When, on the 20th of July, it received from the Mercantile National Bank the $2,000 upon the presentation of plaintiff's check to its order which it had made payable at the Mercantile National Bank which was equivalent to certification, it received no money from the plaintiff, but simply transferred its own money from its account in the Mercantile National Bank to its own account on its own books; or, if the transaction had been in specie, took its own money from the vaults of the Mercantile National Bank, and put it in its own vaults in its own banking house and credited the amount upon the plaintiff's account, so that, if he had known of the transaction, he could have drawn it out. But the situation was that it was debtor to the plaintiff, as evidenced by its books in the sum of $2,000, and this was the situation when the Superintendent of Banks took charge.

[1] Upon taking charge, it may be assumed that he received the notes which the bank had discounted, and it may be assumed that he collected them. Being the property of the bank, the proceeds came into his hands applicable to the payment of the general debts of the bank, and upon the face of the books plaintiff was simply a general creditor to the amount of his account there standing. Upon what basis can the plaintiff, as against the Superintendent of Banks, a mere conservator and liquidator of the bank, by virtue of his official position, have a cause of action? To be sure for $6,000 worth of notes, title to which plaintiff transferred to the bank, he has only received $4,000, but this situation was not created by the defendant.

[2] If the crediting of the $2,000 to the plaintiff's account on the 20th of July, prior to the due date of the notes and without notice to him, is to be considered as a diversion of his check and a conversion, it was accomplished 15 days before the Superintendent took charge and by the bank, and he cannot be held responsible as in tort for the bank's act. If the claim is based upon a trust or fiduciary relation as of a special deposit of money for a special purpose, as for instance the lodging of funds by the maker of a note to meet a specific note thereafter to become due, it seems to me that such a claim has no foundation in the facts presented. The utmost that I can see in the transaction is the postponement of the right to draw a credit given. I do not think that the plaintiff is entitled to any priority but that he is a creditor of the bank, and, while it is true that the bank owes him $2,000, he may not recover that sum against the Superintendent

in this action, but must take his place with the other creditors of the bank, file his claim, and share with them in the general assets.

The judgment appealed from should be reversed, with costs and disbursements to the appellant, and the complaint dismissed, with costs.

SCOTT and DOWLING, JJ., concur.

LAUGHLIN, J. (concurring). I vote for reversal solely upon the ground that by virtue of the provisions of section 19 of the banking law (Consol. Laws 1909, c. 2) the Legislature clearly contemplated that the Superintendent of Banks should take possession of the property and business of the bank as it existed at the time he determined that the public interest required such action, but that any action with respect to the property or business of the bank should be brought by or against the corporation, which still retains its corporate existence, as if still managed by its board of directors; and in this view it is unnecessary to decide now whether the check or the proceeds of the check must be deemed pledged property and recoverable as such.

INGRAHAM, P. J. (dissenting). The European-American Bank was a corporation organized under the laws of the state of New York, and the plaintiff was a depositor of such bank. On or about May 26, 1910, he presented two notes, one dated May 24, 1910, payable three months after date to· the order of the plaintiff for $2,000 and one dated May 25, 1910, payable three months after date for $4,000 for discount. The cashier of the bank offered to discount the notes, provided the plaintiff would leave $2,000 of the amount that he was to be paid for the notes on deposit with the bank, whereupon the bank credited him with the $6,000, the face of the notes less the discount, but took from the plaintiff a check payable to its order for $2,000, and this check the bank charged up against the plaintiff's account. Thus they credited the plaintiff with $6,000, and at once as part of the same transaction charged him with $2,000.

I think the fundamental character of this transaction was an advance to the plaintiff of $4,000 on these two notes, the remaining $2,000 to be paid the plaintiff when the notes were paid. Whether the object of the bank in making this transaction in the form that it was made was to enable the bank to obtain interest on $6,000, when it had in effect advanced but $4,000, or whether it was willing to advance but $4,000 on these two notes, seems to me immaterial. What the bank did was to pay to the plaintiff $4,000 on account of the discount of these two notes and what it agreed to do was to pay the plaintiff $2,000 more when the notes were collected. Plaintiff said the cashier told him that, if the plaintiff would leave collateral to secure the payment of these notes at maturity, he would discount them, and, when the cashier was asked how much he wanted, he said $2,000 in cash, whereupon plaintiff signed a check for the $2,000, which the bank at once charged up against his account and then credited him with the $6,000, less the interest. The cashier of the bank said that, when plaintiff presented the notes for discount, the cashier said that he,

plaintiff, would have to leave up as collateral the $2,000 check upon his, plaintiff's account, and that the bank at once charged up against the plaintiff's account the $2,000, represented by this check, with the result that the plaintiff never received that $2,000. The only arrangement in relation to this $2,000 was that it should be retained by the bank until the notes were paid, and the effect, therefore, was that all plaintiff received was $4,000 on the discount of the notes, the bank agreeing to pay him $2,000 in addition when the notes were paid. These notes became due on the 24th and 25th of August, but on the 6th of August the bank failed, and its assets were taken over by the Superintendent of Insurance for the purpose of liquidation. Among the assets he found these notes, and they were duly collected on the 24th and 25th of August, and the whole $6,000 received by the Superintendent from the makers of the notes. When the Superintendent of Insurance collected these notes, $4,000 of the amount was part of the assets of the bank, but I think it clear that the remaining $2,000 was money that belonged to the plaintiff which under his arrangement with the bank was to be paid to him when the bank had collected it, and the Superintendent of Insurance acting for the bank as its liquidator having collected this $2,000 upon the notes that belonged to the plaintiff was responsible to the plaintiff for that amount. If the notes had been deposited with the bank as security for a loan of $4,000, I think nobody could claim that either the bank or the Superintendent of Insurance, as its liquidator, had a right to retain from the proceeds of the notes when paid more than $4,000 sufficient to reimburse the bank for the loan it had made to plaintiff. If the plaintiff had put up independent collateral for the payment of these notes, and the Superintendent of Insurance had received that collateral when the bank failed, when the notes were paid, the plaintiff would clearly have been entitled to the return of the collateral, and, if the Superintendent of Insurance refused to return it, I think he could have sued him for it. It seems to me that the Superintendent stood exactly in the position of the bank; i. e., that the bank had advanced $4,000 on the discount of these notes, and the remainder was to be paid over to the plaintiff when the bank collected it. Thus it was the plaintiff's money to the extent of $2,000 when the Superintendent collected these notes, and not the money of the bank or its creditors. And for that amount I think the plaintiff is entitled to judgment. The act of the bank just before it failed in crediting plaintiff with this $2,000 without giving him any notice of that fact, or opportunity to withdraw it, could not affect the rights as between the plaintiff and the bank under the original contract. The original contract was that the plaintiff was not to receive that $2,000 until the notes were paid. The plaintiff never did receive it, nor was that understanding modified by any arrangement between the parties. It is plain from the evidence that the bank never did intend by this credit to give the plaintiff an opportunity to withdraw that $2,000. It was evidently credited up to balance the account between this bank and the Mercantile National Bank as the result of the check being outstanding. But this had nothing to do with the rights of the plaintiff and certainly until he was notified of

this change in the relation that existed as to this $2,000 no act of the bank could change that relation. What the bank really did was to loan him $4,000 on two notes aggregating $6,000, and the remaining $2,000 was to be retained until the bank collected it when it would belong to the plaintiff. If the bank had failed to collect more than $4,000 on the two notes, it would clearly have been entitled to retain that sum, but the plaintiff would then have been entitled to the two notes to collect whatever he could from the makers. The Superintendent of Insurance, therefore, acting as liquidator of the bank and in its right having collected the $4,000 due the bank and the $2,000 which belonged to the plaintiff and which never had been paid to him, I think the Superintendent held that $2,000 as money had and received for the use of the plaintiff, and for that the plaintiff was entitled to judgment.

I therefore dissent from the reversal of this judgment.