FENTON E. McCALLUM, Plaintiff, *v.* EARL PICKENS, Individually and as Executor, etc., of JAMES D. McCALLUM, Deceased, and Others, Defendants.

Supreme Court, Oswego County, July 6, 1925.

Executors and administrators — claims against estate — action to enforce verbal contract by testator to give plaintiff all of his property in consideration for care and support — preponderance of evidence shows testator not only did not regard plaintiff's residence as his home but that during five last years of his life he was continually absent therefrom — contract not shown where acts of both plaintiff and testator negative theory of existence of contract.

A verbal contract under which plaintiff claims his uncle, the testator herein, agreed to give him all his property in consideration for care and support during testator's lifetime is not established in this action to enforce specifically the alleged agreement, for, as against plaintiff's claim as to the existence of the agreement which he sought to establish by the testimony of six disinterested witnesses, none of whom were present at the making of the agreement but who testified to conversations had with the testator in which there was a casual reference to the effect that plaintiff was to give testator a home during his lifetime in return for which plaintiff was to have testator's property and that testator did live with the plaintiff for a short period of time, defendant's evidence showed that not only did the testator not regard plaintiff's home as his residence, but that during the last five years of his life he was continually absent from plaintiff's house, and furthermore the acts of both plaintiff and the testator absolutely negative the idea of the existence of any such contract as plaintiff claims exists.

Moreover, plaintiff's failure to complain of being left unprovided for in his uncle's will at the reading thereof or to mention the alleged agreement for more than a year after testator's death, and his presenting of bills to the executors for medical attendance and board, cast a doubt as to the existence of the agreement. Furthermore, testator's execution of the will more than fifteen years after the making of the alleged agreement, which is totally inconsistent with the terms of the agreement, and the acceptance by the plaintiff of the provisions therein, is indicative of the fact that no agreement existed at all and warrants the dismissal of the complaint.

ACTION for specific performance of alleged contract made by decedent with plaintiff.

*Oliver D. Burden* and *Clarence J. Gorman,* for the plaintiff.

*Chas. J. Yorkey* and *H. D. Coville,* for the defendants.

EDGCOMB, J. This action is brought against the executors and legatees of James D. McCallum, who died on the 29th day of September, 1923, to specifically enforce a verbal agreement, which it is claimed was made between deceased and the plaintiff in the year 1906, whereby the former agreed to give to the latter all of his property and estate when he was through with it in return for a home, food, shelter, medical attention and care during decedent's lifetime.

If the alleged contract was ever made it was breached by decedent, because more than two years before he died he made a will, which has duly been admitted to probate by the surrogate of Oswego county, in which he gave to Earl Pickens and Millie Gehr, his nephew and niece, all of his estate, after the payment of various specific bequests, leaving nothing whatever to the plaintiff except a small bequest of $300. Decedent's residuary estate amounts to upwards of $30,000.

The law is well settled that an agreement by one to make a particular disposition of his property at death for the benefit of another will be enforced in equity against those to whom the legal title of the property has descended, provided the contract is definite and certain, and is clearly established, and on condition that it has been performed by the other party to the contract, and is free from all objections as to adequacy of consideration or any circumstances showing the claim to be inequitable. (*Morgan* v. *Sanborn*, 225 N. Y. 454; *Seaver* v. *Ransom*, 224 id. 233; *Middleworth* v. *Ordway*, 191 id. 404; *Phalen* v. *U. S. Trust Co.*, 186 id. 178; *Winne* v. *Winne*, 166 id. 263; *Godine* v. *Kidd*, 64 Hun, 585; *Barrett* v. *Miner*, 119 Misc. 230.)

The defendants not only deny the making of the alleged agreement, but they insist that, if it ever was made, it is void under the Statute of Frauds, and is inequitable, and that the consideration therefor is inadequate, and that the plaintiff has never performed his obligation thereunder, and that the plaintiff is estopped from enforcing the contract by his own conduct, and that the action is barred by the Statute of Limitations.

The first question to be decided is whether the alleged contract was ever made.

It is not claimed that the agreement is in writing. Death has closed the mouth of one party to the bargain, and the law has closed the mouth of the other. Plaintiff must prove the promise as best he can, and defendants are likewise handicapped in disproving its existence. The courts recognize the danger which lurks in compacts of this nature, which summarily dispose of one's estate. They are easy to fabricate, and must be clearly established. While it is

not essential that they be in writing (*McKeon* v. *Van Slyck*, 223 N. Y. 392, 398), nevertheless when an oral·contract is sought to be enforced, the triers of the facts are required to carefully scrutinize and weigh the evidence, and should be satisfied of its existence by clear and convincing proof. (*McKeon* v. *Van Slyck, supra; Ward* v. *N. Y. Life Ins. Co.*, 225 N. Y. 314; *Wallace* v. *Wallace*, 216 id. 28, 39; *Taylor* v. *Higgs*, 202 id. 65; *Holt* v. *Tuite*,188 id. 17; *Rosseau* v. *Rouss*, 180 id. 116; *Hamlin* v. *Stevens*, 177 id. 39; *White* v. *Devendorf*, 127 App. Div. 791; 197 N. Y. 598; *Matter of Housman*, 182 App. Div. 37; *Hungerford* v. *Snow*, 129 id. 816.)

Bearing in mind the above rule let us examine the evidence relating to the execution of this contract to ascertain if the plaintiff has borne the burden cast on him of proving its existence by a fair preponderance of the evidence.

Decedent was a bachelor; his nearest relatives were nephews and nieces, among whom was the plaintiff, a prominent physician residing in Pulaski, N. Y. For many years prior to his death deceased had lived in various places and with different people, apparently coming and going as suited his fancy. He was past seventy when he died, and in fair health.

No witness to the actual making of the alleged agreement was produced. Plaintiff sought to establish its existence by the testimony of six disinterested and credible witnesses, who testified to conversations had with decedent at various dates subsequent to 1906, in which deceased referred in a more or less casual manner to the fact that he had an understanding with the plaintiff by which the plaintiff was to give him a home as long as he lived, and in return therefor was to have his property after his death, and by the evidence of several witnesses that deceased lived with the plaintiff for a portion of the time from 1906 to the date of his death, coming and going as he desired, and that the plaintiff cared for him and furnished him with food, shelter and medical attendance. Several witnesses testify to admissions of decedent that he was pleased with his home.

Evidence of admissions of a dead man has always been considered weak and unreliable, and should be acted upon with caution, and be scrutinized with care, before it is made the basis of establishing the existence of a contract by the decedent. (*Gnichtel* v. *Stone*, 233 N. Y. 465, 469; *Tousey* v. *Hastings*, 194 id. 79; *Taylor* v. *Higgs, supra; Rosseau* v. *Rouss, supra; Malin* v. *Malin*, 1 Wend. 626, 652; *Law* v. *Merrills*, 6 id. 268, 277; *Hope* v. *Evans*, 1 S. & M. Ch. [Miss.] 195, 204; *Earle* v. *Picken*, 5 Carr. & P. 542; *Rex* v. *Simons*, 6 id. 540.)

In *Tousey* v. *Hastings* (*supra*) Judge VANN uses the following

quotation from a decision of the Supreme Court of the United States: " Courts of justice lend a very unwilling ear to statements of what dead men had said."

In *Malin* v. *Malin* (*supra*) the court says: " It has been often said, both by judges and by elementary writers, that proof of the declarations or confessions of parties, is the most unsatisfactory species of evidence, on account of the facility with which it may be fabricated and the impossibility of contradicting it, and because the slightest mistake or failure of recollection may totally alter the effect of the declaration."

In *Law* v. *Merrills* (*supra*) the court says: " Evidence to establish a fact by the confessions of the party should always be scrutinized, and received with caution; as it is the most dangerous evidence that can be admitted in a court of justice, and the most liable to abuse. Although a witness is perfectly honest, it is impossible, in most cases, for him to give the exact words in which an admission was made. And sometimes even the transposition of the words of a party may give a meaning entirely different from that which was intended to be conveyed to the witness."

In *Earle* v. *Picken* (*supra*) Parke, J., observed that: " Too great weight ought not to be attached to evidence of what a party has been supposed to have said; as it very frequently happens, not only that the witness has misunderstood what the party has said, but that, by unintentionally altering a few of the expressions really used, he gives an effect to the statement completely at variance with what the party really did say."

While it is true that the uncontradicted, positive testimony of disinterested and unimpeached witnesses cannot be capriciously or arbitrarily set aside or disregarded, and while no one has been brought forward to gainsay that the decedent did not say to the various witnesses produced by the plaintiff just what they claim he said, defendants have produced evidence of conduct on the part of both the decedent and the plaintiff himself which they say absolutely negatives the idea of the existence of any such contract as it is claimed subsists here. It, therefore, becomes necessary to briefly review that testimony to see if it overcomes the proof of the plaintiff which tends to establish the existence of the alleged bargain, giving to the evidence of each party the weight to which it is entitled.

The following acts on the part of the decedent are a few straws which would seem to indicate that during his lifetime he did not consider that the plaintiff's home in Pulaski was his home, or that he was entitled to spend his remaining days there and be furnished without pay as he went along with board, lodging, care and medical attendance.

Decedent always voted in the town of Hastings. Hence he did not consider Pulaski as his legal residence. He spent but little time comparatively during the latter years of his life at plaintiff's home. From the spring of 1918 down to his death in September, 1923, he lived in Mallory, at a hotel conducted by Mr. Pierce, with the exception of a little less than twelve months, and paid for his board. He died at Mr. Pierce's hotel, and was there during his last illness, which extended over a period of three weeks. On many occasions when he was in need of medical attendance he called in physicians other than the plaintiff, and paid them for their services. True it is claimed that decedent was entitled to come and go as he pleased, and almost any one would want to make short visits to their various friends, but his continued absence during the last five years of his life is incompatible with the idea that Doctor McCallum's house was his home.

Then, too, there is uncontroverted evidence of acts on the part of the plaintiff which throws very grave doubts on the existence of this alleged contract.

Immediately after the funeral the heirs gathered at the home of Mr. Gehr, where decedent's will was read. Plaintiff was among the number. He did not mention this alleged contract, or the fact that his uncle had failed to carry out its terms. If there was any such agreement it would have been the most natural thing in the world for him to have mentioned it, and to have expressed his surprise that his uncle had not carried out its terms. At first, plaintiff and his three sisters contemplated a contest over the probate of the will, and employed able and learned counsel to represent them. The conflict was to be waged on the usual grounds and not to be based on the existence of this alleged promise and its breach. That would not be proper ground for contesting the will. (*Kine* v. *Farrell*, 71 App. Div. 219, 220.)

Plaintiff never mentioned this alleged compact to the executors until the commencement of this action in the forepart of September, 1924, more than a year after decedent's death. Plaintiff and the executors got together in October, 1923, and agreed to end the intended contest by the payment to each of the contestants of the sum of $250, and the payment to their attorney for his services of a sum not to exceed $150. Plaintiff signed the agreement of settlement on his own behalf and as attorney in fact for his sisters, agreeing not to file any objections to the probate of the will, and waiving their right so to do, and consenting that the will be admitted to probate, and agreeing that they would not at any time bring an action or proceeding of any kind or character to set aside the probate. Plaintiff accepted the payment of this $250, and said nothing about

this contract. He did mention, however, that he had a small bill for medical services against the decedent, and that his wife had a bill for board, which they might want to present. Later the plaintiff did present a bill of $386.50 for medical services performed for the decedent from August 5, 1913, to the date of his death. This bill was itemized, and contains over fifty items of services and medicine furnished, giving day and date. Plaintiff must have kept books of his charges against decedent, else he never could have made this itemized bill. It also appears that the plaintiff's wife presented a bill against the estate for board furnished to decedent, at the rate of $5 a week, from the year 1906, the very year it is claimed this contract was made, down to April 19, 1922, amounting to $1,290.65, and on that bill she has credited a payment of $21 for three weeks' board. This bill was presented with the knowledge of the plaintiff. It too was itemized, showing that a record of the time decedent was at plaintiff's home must have been kept, otherwise the bill could not have been made with such accuracy. Plaintiff and his wife followed up these bills by causing them to be referred, and several hearings were had thereon, when plaintiff asked permission to withdraw the claims, which was finally granted him, and this action was commenced.

It also appears that during the time that this alleged contract was supposed to have been in existence, and in the years 1921 and 1922, the plaintiff presented to the decedent two bills for professional services rendered to him; one for thirty dollars and the other for thirty-two dollars, which decedent paid.

The making of the will in question was in total violation of the agreement which plaintiff claims was made. The agreement and the will are in no way compatible with each other. Nevertheless, plaintiff accepted his legacy, and caused himself to be appointed guardian of his two children and as such guardian accepted their legacies under the will, and signed and acknowledged before his own attorney the usual receipts. That payment was made on the 22d day of July, 1924, less than two months before this action was commenced.

It seems to me that plaintiff's entire conduct from the date of decedent's death down to the commencement of this action is absolutely inconsistent with the existence of this alleged contract. If the plaintiff considered that there was any binding contract in existence which entitled him to the estate of the decedent, amounting to upwards of $30,000, there were numerous occasions when self interest would have actuated him to speak out and make his claim known. His silence, when the ordinary man would have spoken; his acquiescence in the will and the receipt of the benefits thereunder;

charging for services and keeping books showing the itemized charges for medical services against the decedent; permitting his wife to keep a like account for board; presenting his own and his wife's accounts against the estate and actually going to trial on such claims; signing a receipt in which he agrees without a word of protest that he will never at any time bring an action or proceeding of any kind or character to set aside the probate of the will, which, while it may not be broad enough to bar this action, is sufficiently comprehensive to cause the ordinary layman to hesitate and wonder if he was signing away his right to a very substantial sum, if he had any claim whatsoever to that sum; all these are to my mind irreconcilable with the present claim that plaintiff is entitled to the residue of decedent's property by reason of a contract made back in 1906 by which decedent gave it to him for a home, care, board, lodging and medical service.

Plaintiff apparently realizes the force of the argument that his conduct negatives the existence of the contract, because in his complaint he alleges that he did not make known this alleged agreement or seek to enforce it sooner because of his own and his counsel's lack of knowledge as to his legal rights. Plaintiff is an intelligent professional man; a man of affairs. It is inconceivable that had he considered that he had any claim on his uncle's estate by contract or otherwise he would have failed to mention it to his attorney. He evidently did not hesitate to talk with him about the chances of breaking the will. Why then should he have failed to mention the very thing, which if it existed would give him the whole estate, and not the small share which he would take under the intestate laws? He was not proceeding blindly. He had the advice and counsel of learned attorneys. His suggested excuse in his complaint does not ring true.

His palliation of his conduct, however, is contained in his complaint alone. He failed to take the stand, or to explain on the trial why he failed during all this time to mention the existence of this contract, or why he did so many things inconsistent with its life. The law did not shut his mouth as to any explanation of his most peculiar conduct. He was only incompetent to testify as to personal transactions with the decedent. His peculiar conduct is not explained, and to my mind absolutely negatives the claim that the contract was ever made.

Under these circumstances it seems to me that the evidence of the defendants more than rebuts the unsatisfactory character of the evidence of the plaintiff, based solely on the admissions of a dead man. I have no hesitancy in finding that the plaintiff has not established the existence of the contract in question. It,

therefore, becomes unnecessary to discuss the various other defenses raised by the defendants.

Judgment is ordered for the defendants dismissing the complaint, with costs. Findings may be prepared, which, if not agreed upon, may be settled before me on two days' notice.