In the Matter of the Application of JOHN A. BUCKLER, as Administrator, etc., of JENNIE BUCKLER, Deceased, Appellant, to Discover Certain Property of Said Deceased Claimed to Be Withheld.

CHARLES YEARES and Others, Respondents.

Fourth Department, November 7, 1929.

*Glen & Williams* [*Charles E. Callahan* of counsel], for the appellant.

*James E. Cuff*, for the respondents.

EDGCOMB, J.   In this discovery proceeding, instituted pursuant to the provisions of section 205 of the Surrogate's Court Act (as amd. by Laws of 1924, chap. 100), the administrator of the estate of Jennie Buckler, deceased, seeks to compel the respondents to turn over to him some $1,300, which they have in their possession, and which it is claimed belongs to the estate of said decedent.

The money, together with certain personal property, consisting of receipts, letters, deeds, jewelry, trinkets, etc., was contained in a small, well-made, lacquered chest, which decedent turned over to the respondent Ella Yeares, one week prior to her death, under the circumstances hereinafter detailed.

After Mrs. Yeares was served with the order in this proceeding, she delivered the box to her brother-in-law, Charles Yeares, who was brought in as a party by a subsequent petition.   Mrs. Yeares denied that she had in her possession any property of the decedent. Charles Yeares admitted that all of the effects found in the box, with the exception of the money, belonged to Mrs. Buckler, and offered to deliver the same to the petitioner.   The money, however, he insisted belonged to him and to his brother George.   The dispute, therefore, narrows down to the administrator's right to the $1,300.   The learned surrogate has dismissed the petition, in so far as it prays for the delivery of the money to the petitioner.

Section 40 of the Surrogate's Court Act, as amended by chapter 100 of the Laws of 1924, gives to the surrogate jurisdiction to try out the title of the parties to this money, and to compel a return thereof to the petitioner, if it is found to be the property of the decedent.   (*Matter of Booth*, 215 App. Div. 516.)

The evidence of ownership of this money is more or less circumstantial, and the question must be determined largely upon presumptions and inferences to be drawn from the surrounding facts and circumstances.

The respondents do not claim title to the money in question as a gift from their sister.   They insist that it always was their property, and that it never belonged to the decedent, but that she held it for them.   We may, therefore, confine our discussion to that claim.   The transaction lacks several elements of a gift, and the respondents could not hope to sustain the decree appealed from upon such a theory.

The burden rests upon the petitioner to make a *prima facie* case showing that he is entitled to possession of this money.   (*Matter*

*of Canfield,* 176 App. Div. 554; *Matter of Glasgow,* 121 Misc. 613; *Matter of Tipple,* 118 id. 430; *Matter of Bunt,* 96 id. 114.)

I think that the appellant has sustained the burden thus cast upon him, and that he made out a *prima facie* case, which, if it is not rebutted by the evidence, would entitle him to the return of the money in dispute.

The money consisted of ten- and twenty-dollar bills of the 1910 and 1913 issue, and was found in the box after the death of decedent, tied together in several packages, and folded in the middle. It was not marked in any manner. There is no evidence when the money was put in the box, or where it came from. Decedent's husband testified that he looked in the chest shortly after his marriage to decedent in 1910, and again about two years before the trial, and that there was no money there on either occasion. The box had been used by decedent's mother as a receptacle in which to keep her money and valuables. The mother died on June 4, 1909, and the chest then came into possession of her daughter, who kept it secreted in her house until she handed it to Mrs. Yeares. Decedent had been ill for some time. About two weeks before her death, she requested Caroline Yeares, wife of the respondent Charles Yeares, to take the box home with her. Why she wanted her to do this does not appear. The reason would be pure speculation. Mrs. Yeares replied that she had no place suitable to keep private papers, but that she would come up later and get the box, and put it in a safe deposit vault, and give decedent the key. Several days later, and one week before Mrs. Buckler's death, Mrs. Yeares again visited decedent's home, where she found her sister-in-law, Mrs. Ella Yeares, the wife of George Yeares. Charles and George Yeares were brothers of decedent. On this occasion decedent asked for the key to the box, which neither of her sisters-in-law succeeded in finding. She then asked for the chest, and expressed a desire that Ella Yeares should take and keep it for her until she should want it. Mrs. Yeares complied with this request, took the box, put it in the safe deposit vault of one of the Rochester banks in her own name, after having tried to put it in decedent's name, and having had such request denied by the bank. Mrs. Yeares did not know what was in the chest. Neither she nor Charles Yeares, to whom she subsequently delivered the box, ever saw its contents until the time of the trial. She freely disclosed her possession of the property to the administrator, and the attorneys for the parties took an inventory of the contents of the chest. Mrs. Yeares makes no claim to any of this property; she freely admits that she was holding the box in trust for decedent. She never had the unqualified possession of the chest, or its contents. While it

was in her keeping for a few days, it was subject to the control of Mrs. Buckler. Respondent was simply a bailee, obligated to return the property to decedent whenever so requested. She was not authorized to hand it over to the parties who now claim that they are entitled to it.

The fact that Mrs. Buckler was in possession of this money one week before her death, and had it in a chest, which concededly belonged to her, along with her jewelry and private papers, makes out a *prima facie* case of ownership in decedent. Possession of personal property is presumptive evidence of ownership. (*Byerer* v. *Smith*, 55 App. Div. 405, 407; *Wheeler* v. *Vanderveer*, 88 Hun, 233; *Halsey* v. *Hart*, 85 id. 46.)

Such presumption, however, is not conclusive; it will yield to proof to the contrary. Respondents claim that petitioner's *prima facie* case has been met and overcome by proof of the delivery of the box to Mrs. Yeares just prior to decedent's death, and by other evidence in the case, which will be referred to later. I do not think that the delivery of this box, without the key, to Mrs. Yeares, in the manner heretofore detailed, and her qualified possession for one week, can be held to overcome the presumption of ownership, which arises from decedent's long possession of the money up to within a week of her death. It must be remembered that Mrs. Yeares makes no claim whatsoever to this money, and that she was never authorized to turn it over to her brothers, and that they never were in possession of it until after the death of deceased. Mere possession of a chattel by a third party after a decedent's death raises no presumption of ownership. (*Podmore* v. *Dime Savings Bank*, 29 Misc. 393; affd., 55 App. Div. 624.)

Respondents also argue that any *prima facie* case which the petitioner made out is successfully rebutted by the statement made by decedent to Caroline Yeares a few days before her death, when she said " that there was money in the box that belonged to the boys." There is no direct evidence as to whom she meant by the word " boys," but respondents claim that she referred to her brothers, Charles and George Yeares. It is probably true, as urged by the respondents, that the petitioner must recover upon the strength of his own title, and not upon the weakness of respondent's title. However, I am of the opinion that this statement of decedent's is not sufficient, under the facts and circumstances as disclosed by this record, to overcome the presumption of her ownership of this money.

The rule is well settled that statements and admissions of a deceased person should be acted upon with caution, and should be scrutinized with care. Such evidence has universally been con-

sidered weak and unreliable. (*Gnichtel* v. *Stone*, 233 N. Y. 465, 469; *Taylor* v. *Higgs*, 202 id. 65; *Tousey* v. *Hastings*, 194 id. 79; *Rosseau* v. *Rouss*, 180 id. 116; *McCallum* v. *Pickens*, 126 Misc. 436, 438; affd., 217 App. Div. 714; *Malin* v. *Malin*, 1 Wend. 625, 652; *Law* v. *Merrills*, 6 id. 268, 277; *Earle* v. *Picken*, 5 Carr. & P. 542; *Rex* v. *Simons*, 6 id. 540.)

Judge VANN, quoting from *Lea* v. *Polk County Copper Co.* (21 How. [U. S.] 493, 504), said in *Tousey* v. *Hastings* (*supra*): " Courts of justice lend a very unwilling ear to statements of what dead men had said."

No explanation is forthcoming as to why decedent should have kept this money all this time if it belonged to her brothers. They were long past twenty-one, and were married, and undoubtedly could have used the money. There is no evidence that they were spendthrifts or incapable of taking care of it. It is inconceivable that they would have sat idly by and permitted their sister to hoard so large a sum in this box, where it would draw no interest, if it was actually theirs. The suggestion of respondents that possibly this money was due the boys from the estate of their mother, and that it was held by decedent for their benefit, is without any foundation whatsoever in the evidence. The mere fact that the mother never had a bank account, and that she kept her money in this box tied in a manner similar to that in which the bills in question were found, cannot be made the basis of such a contention. If such theory was entitled to any weight whatsoever, it is exploded by the fact that the mother died June 4, 1909, and the bills are all of the 1910 and 1913 issue. This claim is also refuted by the testimony of the petitioner, who says that there was no money in the box as late as two years before the date of the trial.

To my mind, the probabilities are all against the claim of the respondents. The fair inference to be drawn from this testimony is that the money in dispute belonged to the decedent. In my opinion, the conclusion reached by the learned surrogate was wrong, and the order appealed from should be reversed, and respondents should be ordered to deliver the money in their control to the petitioner.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Decree reversed on the facts and matter remitted to the Surrogate's Court with directions to enter a decree in accordance with the opinion, with costs against the respondents Charles Yeares and George Yeares.