IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 20, 2006 Session

IN RE:   ESTATE OF ANNE F. THREEFOOT, ANNE W. MILLER v. THE
UNITED STATES

A Direct Appeal from the Probate Court for Shelby County
No. C-6880      The Honorable DonnSouthern, Judge

No. W2005-02942-COA-R3-CV - Filed November 3, 2006

Appellant, Executrix of Decedent's Estate, filed a request with the Probate Court of Shelby County to authorize the post-mortem transfer of real property to a limited family partnership, which was allegedly established by oral contract entered by and between the Appellant and Decedent prior to Decedent's death.  The United States, Appellee, disputed the Appellant's contention that there was an oral contract to form a partnership.  The trial court found that the record did not support an enforceable oral contract by clear and convincing evidence.  Appellant appeals.  We affirm and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Robert F. Miller, Robert A. McLean, Nichol Gibson Davison, and Paul C. Peel of Memphis, Tennessee for Appellant, Anne W. Miller

John A. Nolet and Lindsey Cooper of Washington, D.C., for Appellee, The United States

**OPINION**

Anne F. Threefoot ("Decedent") died testate on September 23, 2002.  The Decedent named her only child, Anne W. Miller ("Appellant"), executrix of her Estate.  On October 18, 2002, Ms. Miller filed a "Petition for Probate of Will and Appointment of Personal Representative" for the Last Will & Testament of the Decedent.  The Decedent's Will was admitted to probate on the same day, and Ms. Miller was appointed executrix thereof.  In her Will, the Decedent made a number of specific cash bequests, but bequeathed all of her personal effects and remainder of her Estate to Ms. Miller.  According to an accounting filed by the Estate on October 14, 2005, the gross probate estate at Decedent's death exceeded $3 million.

On August 27, 2003, Ms. Miller filed, on behalf of the Estate, a "Petition to Authorize Execution of Partnership Agreement and Subscription Agreement and Sale of Real Estate" (the "Petition"). The Petition reads, in relevant part, as follows:

> 2. That prior to Ms. Threefoot's death, the law firm of Waller Landsen Dortch & Davis...was retained by [Ms. Miller], acting as attorney-in-fact for the deceased, to provide estate planning services. These services included forming a family limited partnership under the laws of the State of Tennessee and known as the Threefoot Family Partners, L.P. (The "Partnership") in which the deceased would own a ninety-nine percent (99%) limited partnership interest and [Ms. Miller] a one percent (1%) general partnership interest.
>
> 3. That pursuant to the Partnership Agreement and a subscription agreement related thereto, the deceased agreed to contribute all of her interest in certain tracts of real estate lying in Perry County, Tennessee, except for a residence and three surrounding acres located thereon, and certain securities, bonds and cash in her brokerage accounts....
>
> 4. That the Certificate of Formation for the Partnership was signed by [Ms. Miller] and filed with the Secretary of State on September 16, 2002, and with the Shelby County Register on September 23, 2002....[1]
>
> 5. That the Partnership Agreement and Subscription Materials for the Partnership were completed on September 20, 2002, in accordance with the agreement entered into between [Ms. Miller] and the decedent, but were not executed prior to the death of decedent....
>
> 6. That pursuant to T.C.A. Sections 61-1-101(7) and 61-2-502(a), the decedent and [Ms. Miller] made a binding oral agreement to enter into the Partnership Agreement and contribute the assets to the Partnership....
>
> *                                    *                              *
>
> 8. That [Ms. Miller], as Executrix, is required pursuant to T.C.A. § 61-2-502(a) to transfer title to the property described in the Subscription Agreement to the Partnership....

---

[1] This document was attached as Exhibit A to the Petition.

9. That while title to the real property described in the Subscription Agreement vested in the beneficiaries under the decedent's will pursuant to T.C.A. § 31-2-103, the Court is nonetheless authorized under T.C.A. § 30-2-402(c) to divest those beneficiaries of their title and interest to the real property and authorize [Ms. Miller] to vest title to the real property in the Partnership to satisfy its statutory right to the real property.

\*　　　　　　　　　\*　　　　　　　　　\*

11. That pursuant to 28 U.S.C.S. § 2410, the United States of America be joined as a party to this action for the purpose of quieting title to the property that the decedent agreed to transfer to the Partnership and determining that the lien arising under 26 U.S.C.S. § 6324 (a)(1) (lien for federal estate taxes) applies to the 99% limited partnership interest in the Partnership which was part of the decedent's probate estate rather than to the property which is subject to the contractual rights of the Partnership and is to be contributed to the Partnership pursuant to the terms of the Subscription Agreement because of the prior claim of the Partnership under T.C.A. § 61-2-502(a).

The Partnership Agreement and Subscription Materials were attached to the Petition as Exhibits B and C respectively. The Partnership Agreement was executed on June 4, 2003 (some seven months after Decedent's death) by and between Ms. Miller as general partner and The Estate of Anne F. Threefoot as a limited partner. The Subscription Materials provide, in relevant part, that: (1) the Estate subscribes to a 99% limited partnership interest and, in consideration thereof, agrees to transfer to the Partnership several tracts of real property located in Perry County, Tennessee (no cash value is given for the real property), and specific amounts of cash and marketable securities (with a value of nearly $1.5 million); and (2) Ms. Miller individually subscribes to a 1% general partnership interest and, in consideration thereof, agrees to a cash contribution equal to 1.010100101 percent of the fair market value of the property contributed by the Estate. Neither the Partnership Agreement nor the Subscription Materials were signed by the Decedent prior to her death (as they were both executed some seven months after that event). Rather, all documents were signed by Ms. Miller, individually as to her interest and contribution as a general partner and in her capacity as executrix of the Decedent's Estate as to the Estate's interest and contribution as a limited partner.

On October 2, 2003, the United States ("Appellee") filed a "Notice of Removal" of the case to the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. §§1444 and 2410. On October 14, 2003, the United States filed its Answer in which it denies that the Decedent was a partner in the Partnership, and denies that the Decedent effectuated any transfer of property into the Partnership, or that the Decedent authorized such transfer. On October 31, 2003, the Estate moved to remand the matter to State court. As grounds for its motion, the Estate asserted

that federal jurisdiction would require a federal question and, because the case involved only the question of whether Decedent had entered into an enforceable oral contract respecting her property, no such federal question existed so as to confer jurisdiction on the federal court. In the alternative, the Estate argued that the case involved only state probate matters and, consequently, was subject to the "probate exception" to federal jurisdiction. Although the United States opposed the remand, by its Order of March 15, 2004, the District Court held that it lacked removal jurisdiction, granted the Estate's motion and remanded the matter to the Tennessee probate court.

On July 9, 2004, the United States filed a motion to dismiss the Petition for lack of jurisdiction or, in the alternative, for summary judgment. This motion was denied by the court and the matter proceeded to hearing on October 17, 2005. On November 17, 2005, the trial court entered its Order, which reads, in pertinent part, as follows:

> [O]n the issue before the Court–whether there is an executory contract which should be enforced–the Court finds:
>
> 1. There was no writing evidencing a contract to contribute any assets to the partnership.
>
> 2. When an oral contract is sought to be enforced the trier of fact must scrutinize and weigh the evidence and determine the existence of an oral contract by clear and convincing proof.
>
> 3. After about a fifteen minute meeting with her CPA and [Ms. Miller], the decedent instructed [Ms. Miller] and her accountant to get the family limited partnership done.
>
> 4. A family limited partnership was formed but the decedent passed away before any assets were transferred into the partnership, which at the time of decedent's death was an empty vessel.
>
> 5. The proof is not sufficient as to exactly what the decedent would have put into the partnership.
>
> 6. The decedent did not make a gift of the Perry County real estate in that she did not transfer it during her lifetime and the gift was not completed.
>
> Whereupon, this Court further finds that there was no contract to contribute any assets to the family limited partnership which is binding upon the Estate of Anne Threefoot.

-4-

> Wherefore, it is hereby ordered, adjudged and decreed that
> there was no contract binding upon the Estate of Anne Threefoot to
> fund the family limited partnership....

Ms. Miller appeals from this Order and raises two issues for review as stated in her brief:

> I. Whether the Probate Court erred in holding that there was no
> contract to contribute any assets to the family limited partnership
> which is binding upon the estate of Anne F. Threefoot.
>
> II. Whether the Probate Court erred in applying a clear and
> convincing standard to the funding of the partnership.

Concerning the standard of review used by the trial court, Ms. Miller argues that the trial court erred in requiring the Estate to prove the existence of an enforceable partnership contract by clear and convincing evidence, and asserts that the less stringent preponderance of the evidence standard is applicable to the question of whether an oral contract to fund the Partnership exists.

In 1988, Tennessee adopted the Tennessee Revised Uniform Limited Partnership Act ("TRULPA"), codified at T.C.A. §§ 61-2-101 to 61-2-1208 (2002 and Supp. 2005). TRULPA defines a limited partnership as "a partnership formed by two (2) or more persons under the laws of the state of Tennessee, and having one (1) or more general partners and one (1) or more limited partners." T.C.A.. § 61-2-101(8). T.C.A. § 61-2-20 pertains to the execution of a Certificate and the formation of a limited partnership and reads, in relevant part, as follows:

> A limited partnership is formed at the time of the filing of the initial
> certificate of limited partnership with the secretary of state or at any
> later date or time specified in the certificate of limited partnership if,
> in either case, there has been substantial compliance with the
> requirements of this section.

T.C.A. § 61-2-201(c).

All of the general partners, of which there must be at least one, must execute the certificate of limited partnership. T.C.A. § 61-2-201(a). However, TRULPA does not require a partnership agreement to be filed. T.C.A. § 61-2-201(b). A partnership agreement is "...any agreement, written or oral, of the partners as to the affairs of a limited partnership and the conduct of its business." T.C.A. § 61-2-101(11). Although TRULPA does not require a written partnership agreement, *see* T.C.A. 61-2-201(b), "TRULPA does implicitly presume that a limited partnership will operate from some kind of agreement or understanding between the partners." *In Re Taylor & Assoc., L.P.*, 249 B.R. 431, 443 (E.D. Tenn. 1997). In reaching the conclusion that TRULPA presumes some sort of agreement between the parties to the partnership, the *Taylor* Court reasoned as follows:

It is axiomatic that business associates, whether joint venturers, partners, or limited partners, to a minimum degree jointly agree to and understand the purpose, intent, and goal of their business relationship. Indeed, the partners of a limited partnership must agree "as to the affairs of a limited partnership and the conduct of its business." *See* [T.C.A.] § 61-2-101(11) (defining a partnership agreement). Section 61-2-301, in relevant part, is instructive:

> (a) In connection with the formation of a limited partnership, a person acquiring a partnership interest as a limited partner is admitted as a limited partner of the limited partnership *upon the latter to occur of*:
>
> (1) The formation of the limited partnership[, see Section 61-2-201(c) ]; or
>
> (2) *The time provided in and upon compliance with the partnership agreement or, if the partnership agreement does not so provide, when the person's admission is reflected in the records of the limited partnership.*
>
> (b) After the formation of a limited partnership, a person acquiring a partnership interest as a limited partner is admitted as a limited partner of the limited partnership:
>
> (1) In the case of a person acquiring a partnership interest directly from the limited partnership, *at the time provided in and upon compliance with the partnership agreement or, if the partnership agreement does not so provide, upon the consent of all partners and when the person's admission is reflected in the records of the limited partnership····*

*Id*. § 61-2-301(a)(1), (2), and (b)(1) (emphasis added).

An analysis of TRULPA reveals people wanting to form a limited partnership cannot just stumble into one. The statutory requirements for becoming a limited partner are significant; the benefit of limited liability exacts a price. "Generally, limited partnerships are creatures of statute, and statutory compliance establishes their existence." *Hayes v. FPI Nursery Partners 1984-I*,

No. 90-15224, 936 F.2d 577 (Table), 1991 WL 103447, at p. *3 (9th Cir. June 11, 1991) (citation omitted); *see also In re Drimmel*, 108 B.R. 284, 287 (Bkrtcy.D.Kan.1989) (noting limited partnerships, as "creatures of statute[, ...] must be defined"). Limited partnerships are creatures of statute.... Unlike a general partnership, a limited partnership cannot be created by informal agreement; its existence depends on compliance with the Uniform Limited Partnership Act.... [F]iling defects affect the liability of the ostensible limited partners. *Continental Waste System, Inc. v. Zoso Partners*, 727 F.Supp. 1143, 1146 (N.D.Ill.1989) (applying Illinois law).

*In Re Taylor & Assoc., L.P.*, 249 B.R. at 443-44.

In addition to the statutory filing requirements, in order to form a limited partnership, there must also be proof that the parties to the partnership "inten[ded] to do the things which constitute a partnership." *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991). This requisite intent arises from the partnership agreement, which, as discussed above, may be oral in form. In the instant case, although there is a written Partnership Agreement, that written agreement was executed after the Decedent's death. Consequently, it provides no conclusive evidence as to whether Ms. Threefoot intended to enter into a partnership prior to her death and, if so, what she intended to contribute to that partnership.

The burden of proof of the existence of a partnership is upon the one who alleges the partnership. *Mullins v. Evans*, 308 S.W.2d 494, 498 (Tenn. Ct. App.1957). In *Johnson v. Graves*, 15 Tenn. App. 466, 1932 WL 1342 (1932), the Court determined that oral partnership agreements of the type at issue in the case at bar should be analyzed under a clear and convincing standard of proof. The Court's reasoned as follows:

> The Courts recognize the danger which lurks in contracts of this nature [i.e. contracts of partnership], which summarily dispose of one's estate. They are easy to fabricate, and must be clearly established. While it is not essential that they be in writing, nevertheless when an oral contract is sought to be enforced, the tryers [sic] of the facts are required to carefully scrutinize and weigh the evidence, and should be satisfied of its existence by clear and convincing proof. Evidence of admissions of a dead man has always been considered weak and unreliable, and should be acted upon with caution and be scrutinized with care before it is made the basis of establishing the existence of a contract by the decedent.

*Id.* at *12 (quoting *McCallum v. Pickens*, 213 N.Y.S. 119, 121 (N.Y. Sup. 1925)).

Although these contracts may be express or implied, written or oral, in order to be enforceable the contract must, "among other elements, result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, and must be sufficiently definite." *Wheeler v. Haley*, No. 91-267-I, 1993 WL 398489, *5 (Tenn. Ct. App. Oct. 1, 1993) (citing *Johnson v. Central Nat. Ins. Co.*, 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281 (1962); *Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n.*, 807 S.W.2d 559, 564 (Tenn. Ct. App.1990); *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 933 (Tenn. Ct. App.1984)). In *Bass v. Bass*, 814 S.W.2d 38 (Tenn. 1991), our Supreme Court explained the standard for determining the existence of a partnership contract based upon the intention of the parties thereto, to wit:

> [T]he existence of a partnership depends upon the intention of the parties, and the controlling intention in this regard is that ascertainable from the acts of the parties. *Wyatt v. Brown*, 39 Tenn.App. 28, 281 S.W.2d 64, 67 (1955). Although a contract of partnership, either express or implied, is essential to the creation of partnership status, it is not essential that the parties actually intend to become partners. *Wyatt*, 281 S.W.2d at 67. The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts. *Roberts*, 779 S.W.2d at 795-96. It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship. *Wyatt*, 281 S.W.2d at 67. Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.

*Id*. at 41 (footnotes omitted).

Because the written Partnership Agreement in this case is not dispositive on the issue of whether Ms. Threefoot intended to form a limited partnership with her daughter, if a contract of partnership exists, then the record here must establish, "by clear and convincing proof, the existence of an oral contract of partnership evidenced by mutual assent to sufficiently definite terms that is supported by valid consideration." *In re Taylor & Assoc., L.P.*, 249 B.R. at 469. Although it does not require as much certainty as the "beyond a reasonable doubt" standard, the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn.Ct.App.1995) (rev'd on other grounds); *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. Ct. App.1992). In order to be clear and convincing, evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn.1992); *O'Daniel*, 905 S.W.2d at 188. Such evidence should produce in the fact-finder's mind a firm belief or conviction

as to the truth of the allegations sought to be established. ***O'Daniel***, 905 S.W .2d at 188; ***Wiltcher v. Bradley***, 708 S.W .2d 407, 411 (Tenn.Ct.App.1985). In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. ***Lettner v. Plummer***, 559 S.W.2d 785, 787 (Tenn.1977); ***Goldsmith v. Roberts***, 622 S.W.2d 438, 441 (Tenn.Ct.App.1981); ***Brandon v. Wright***, 838 S.W.2d at 536. Nonetheless, even if there is not sufficient proof in the record of an oral contract, "the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." ***Bass***, 814 S.W.2d at 41.

At the close of proof in this case, the trial court concluded that the evidence failed to establish the existence of an oral contract that is sufficiently definite to enforce, to wit:

> The problem is, it's more in terms of whether there was a contract, executory contract. I think I've got to look at, under these circumstances, as to whether I can find that there was a contract. It's clear that they–there was no written agreement, written contract, evidencing a contract.
>
> The law is clear in Tennessee, when an oral contract is sought to be enforced, the trier of fact must scrutinize and weigh the evidence, satisfy its existence by clear and convincing proof.... [T]o be an enforceable contract, it must result in the meeting of the minds and mutual consent, must be based upon sufficient consideration and must be sufficiently definite.
>
> It appears to me that we've got some problems in several areas, where one of which is the–it's sufficiently definite, the evidence is that after about a 15-minute meeting with the CPA and her daughter, she [Ms. Threefoot] said go ahead or go to it or get it done, towards to that effect. Sadly and unfortunately, she passed away before the–much one was done, other than establishing the–filing the certificate in Nashville, which is really not much more than an empty vessel with nothing transferred to it. Nothing was transferred to it during her lifetime. And I do think that there just isn't enough sufficiency of proof as to exactly or even as to what was–what she would have put in that document.

Turning to the record in this case, the evidence indicates that Mr. Foster, Ms. Miller, and Ms. Threefoot met for approximately 45-minutes, 15-minutes of which was spent discussing the proposed family limited partnership. According to Mr. Foster, Ms. Threefoot expressed her desire to maintain control over the family farm and Mr. Foster advised her that she would still own the

property through her partnership interest. Mr. Foster testified that Ms. Threefoot "clearly understood that the farm property and...significant portion of her marketable securities" would go into the Partnership. However, neither Mr. Foster nor Ms. Miller testified that Ms. Threefoot actually told either of them to put the farm or any portion of her securities into the Partnership. The Decedent's directive to "get it done" is not sufficiently definite to provide clear and convincing proof that her intent was to form the Partnership, much less that she intended to transfer the family farm and specific securities into that entity. As the trial court correctly determined, the evidence here can only support a finding that, at most, the Decedent manifested an intent for Ms. Miller and Mr. Foster to begin the process of forming a partnership. There is, however, no evidence in the record on which to base a determination of whether the Decedent expressed an acceptance of any of the terms of the partnership agreement that was written after her death, nor is there any evidence to clearly support a finding that the Decedent intended to transfer the farm, or any securities, to the Partnership.

For the foregoing reasons, we affirm the Order of the trial court and remand this case for such further proceedings as may be necessary. Costs of this appeal are assessed against the Appellant, Anne W. Miller, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.