Joseph A. GASKIN, Plaintiff,

v.

STUMM HANDEL GmbH, Defendant.

No. 75 Civ. 161 (JMC).

United States District Court,
S. D. New York.

Feb. 28, 1975.

362

Strassberg & Strassberg, New York City (Lawrence Fechner, New York City, of counsel), for plaintiff.

Baker & McKenzie, New York City (Robert B. Davidson, New York City, of counsel), for defendant.

## MEMORANDUM DECISION

CANNELLA, District Judge:

■ On the instant motion the defendant, Stumm Handel GmbH, seeks the dismissal of this diversity action (originally commenced in the New York Supreme Court, New York County) upon the ground that the contract now in dispute between the parties contains a forum selection clause requiring the litigation of this dispute in the courts of West Germany. This forum selection clause immediately precedes plaintiff's signature on the involved employment contract and provides that:

Any controversies arising out of this contract shall be settled by means of negotiations with the Management and, if necessary, with the remaining partners.

In case of failure of such negotiations it is agreed that Essen [the Republic of West Germany] shall be the forum to which any controversy must be submitted.

(Contract of August 1973 at ¶10, as translated.) In addition to seeking the dismissal of this cause for the reason above stated, the defendant also seeks a declaration by this Court that an order of attachment dated October 31, 1974 which was obtained by the plaintiff in the New York Supreme Court prior to the removal of this case is invalid under the provisions of CPLR 6213 and that, pursuant to CPLR 6212(b), it be awarded "all legal costs and damages which [have been] sustained by reason of the attachment," if we determine "that the plaintiff was not entitled to an attachment of the defendant's property." As the Court finds that the forum selection clause contained in the parties' contract of August 1973 should be enforced, the motion to dismiss is hereby granted. In addition, upon the submission of an appropriate order, we will vacate the order of attachment obtained by plaintiff on October 31, 1974 and award to the defendant such costs and damages as it may be entitled to according to law.[1]

■ A forum selection clause contained in an international agreement of the type now before the Court will be enforced according to its terms when the criteria established by the Supreme Court in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), have been complied with. *See also*, Scherk v. Alberto-Culver Co., 417 U.S. 506, 518–19, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); Fireman's Fund American Ins. Companies v. Puerto Rican Forwarding Cos., Inc., 492 F.2d 1294, 1296–97 (1 Cir. 1974); In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 234 n. 24 (6 Cir. 1972); National Equipment Rental, Ltd. v. Reagin, 338 F.2d 759 (2 Cir. 1964); Spatz v. Nascone, 364 F.Supp. 967, 974–79 (W.D.Pa.), supplemented, 368 F.Supp. 352, 355–56 (W.D.Pa.1973); Roach v. Hapag-Lloyd, A.G., 358 F.Supp. 481, 483 (N.D.Cal. 1973); Restatement (Second) of the Conflict of Laws § 80 (1971); *cf.*, Ringers' Dutchochs, Inc. v. S.S.S.L. 180, 494 F.2d 678, 681 (2 Cir. 1974).[2] In the

1. Such award of costs and damages is appropriate in circumstances such as these. *See*, Weber v. Staedeli, 72 Civ. 4562 (S.D.N.Y. Feb. 14, 1973) (Memorandum at 4).

2. Scholarly reaction to the *Bremen* decision may be found in, e. g., Nadelman, Choice-of-Court Clauses in the United States: The Road to Zapata, 21 Am.J.Comp.L. 124 (1973); Collins, Choice of Forum and the Exercise of Judicial Discretion—The Resolution of an Anglo-American Conflict, 22 Int'l & Comp.L.Q. 332 (1973); Reese, The Supreme Court Supports Enforcement of Choice-of-Forum Clauses, 7 Int'l Lawyer 530 (1973); Note, The Enforcement of Forum Selection Provisions in International Commercial Agreements, 11 Colum.J.Transnat'l L. 449 (1972); Note, 14 Harv.Int'l L.J. 145 (1973).

*Fireman's Fund* case, 492 F.2d at 1296–97, the First Circuit summarized the Bremen v. Zapata holding in the following terms:

> The normal rule with respect to choice-of-forum clauses is that they should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances. (Citations omitted). To establish that a particular choice-of-forum clause is unreasonable, a resisting party must present evidence of fraud, undue influence, overweening bargaining power or such serious inconvenience in litigating in the selected forum that it is effectively deprived of its day in court (citation omitted).

In similar fashion, the New York courts now march to a tune like that played by the Court in *Bremen* and leave the "enforcement of a forum selection clause to the sound discretion of the court." Davis v. Pro Basketball, Inc., 381 F.Supp. 1, 3 (S.D.N.Y.1974). *Accord*, Hodom v. Stearns, 32 A.D.2d 234, 236, 301 N.Y.S. 2d 146, 148 (4th Dept.), appeal dismissed, 25 N.Y.2d 722, 307 N.Y.S.2d 225, 255 N.E.2d 564 (1969); Export Ins. Co. v. Mitsui S.S. Co., 26 A.D.2d 436, 438, 274 N.Y.S.2d 977, 980 (1st Dept. 1966).[3]

■ In *Bremen*, the Court, after first recognizing that "in the light of present-day commercial realities and expanding international trade . . . [a] forum clause should control absent a strong showing that it should be set aside" (407 U.S. at 15, 92 S.Ct. at 1916), promulgated a two-pronged test under which a resisting party (who satisfies his burden on either prong) may secure avoidance of the contractual forum provision: one must "clearly show that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *Id.* This standard will guide the Court's exercise of discretion in this matter, the resisting party having the burden of convincing us that, notwithstanding its *prima facie* validity, the forum clause should not be enforced.

■ While the standard promulgated in *Bremen, supra,* continues to place primary emphasis upon a determination of "reasonableness" vis-a-vis enforcement, [4] two clearly discernible alternatives under which the resisting party can challenge the enforcement of a choice-of-forum clause are suggested by the Court.

---

3. In Export Ins. Co. v. Mitsui S. S. Co., the First Department, after noting that the "sound discretion" rule, *supra*, was the product of "longstanding legal thinking and the impact of modern commercial conditions" (274 N.Y.S.2d at 980) and that "[i]t [had] long been recognized that there is something anomalous in vitiating a contract provision for exclusive foreign jurisdiction where freely and advisedly entered into and upholding the balance of the agreement, no matter how onerous on a party" (*id.*), stated:

> The vast increase and extension of international trade and international communications has had the effect of lessening the inconvenience of appearance in foreign jurisdictions and abating the concept that such proceedings expose the foreign litigant to injustice or oppression.

*Id.*

4. *See, e. g.,* Restatement (Second) of the Conflict of Laws § 80 ("such an agreement will be given effect unless it is unfair or unreasonable."). As the Second Circuit has pointed out:

> [I]n each case the enforceability of such an agreement depends upon its reasonableness. We agree with the appellant to this extent: the parties by agreement cannot oust a court of jurisdiction otherwise obtaining; notwithstanding the agreement, the court has jurisdiction. But if in the proper exercise of its jurisdiction, by a preliminary ruling the court finds that the agreement is not unreasonable in the setting of the particular case, it may properly decline jurisdiction and relegate a litigant to the forum to which he assented. Such, essentially, was our holding in Cerro De Pasco Copper Corp. v. Knut Knutsen in the case of The Geisha, 2 Cir., 187 F. 2d 990. We adhere to that ruling.

Wm. H. Muller & Co. v. Swedish American Lines, Ltd., 224 F.2d 806, 808 (2 Cir.), cert. denied, 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955), overruled on other grounds, Indussa Corp. v. S. S. Ranborg, 377 F.2d 200 (2 Cir. 1967).

First, he may invoke the ordinary principles of contract law in an effort to obtain a ruling from the court that the involved contract or the forum clause at bar is void or voidable, hence unenforceable. This approach involves the allegation of "fraud or overreaching" suggested by the Court, as well as the invocation of such contract doctrines as mistake, coercion, want of consideration, unconscionability and the like. *See, e.g.,* Collins, *supra,* n. 2, 22 Int'l & Comp.L.Q. at 338–40; Note, *supra,* n. 2, 11 Colum.J.Transnat'l L. at 455. In short form, this may be referred to as the "invalidity" test. Second, the resisting party may prove that under the particular circumstances then extant deference to the contractually chosen forum would be "unreasonable and unjust." Such proof will, in most instances, go to the equities of the matter and, as the Court suggested in *Bremen,* "it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." 407 U.S. at 18, 92 S.Ct. at 1917. While we will more fully discuss certain aspects of this second test *infra,* several of its potential concomitants should be noted. Collins, *supra* n. 2, has recognized seven factors flowing from the *Bremen* decision which may enter into the court's equation in a given case: (1) inequality of bargaining power;[5] (2) public policy; (3) injustice; (4) availability of remedies in the chosen forum; (5) the governing law; (6) inconvenience; and (7) conduct of the parties. 22 Int'l & Comp.L.Q. at 338–43. *See also,* Note, *supra* n. 2,

11 Colum.J.Transnat'l L. at 454–55. In sum, the second test is properly characterized in terms of "reasonableness."

Thus, our analysis which is contained in the ensuing paragraphs must focus upon each of these independent tests separately. Of necessity, facts which are advanced by the resisting party in attempting to satisfy his burden on the first test may bear relevance to our considerations under the "reasonableness" formulation as well. The extent of such cross-utilization will, of course, turn upon the facts then before the court and will involve an *ad hoc* judgment.[6] Factual findings and legal conclusions made with regard to the "invalidity" test may likewise be accorded impact in reaching a determination of the fairness and equity of enforcement. It must be remembered that once the "avoiding" party has made the "strong showing" which is required of him with regard to either (or both) of these standards, we will not enforce the forum clause. With this in mind, we turn to the matter at hand.

■ In attempting to avoid the enforcement of the forum selection clause under contract law principles (Test I), Gaskin states that the contract here at issue was written in German, a language which he neither speaks nor understands, and that prior to his execution of the document he requested of the defendant an English translation of it. He claims that such translation was not forthcoming, however, he does state that "a literal translation [of the contract] . . . was conveyed to [him] by a representative of the defendant." (Gaskin Affidavit of January 29, 1975 at ¶ 5). With regard to such translation, Gaskin asserts that "I was never informed that by executing the [contract], I was consenting to the Republic of

---

5. In this context, the question is not whether the agreement is, as a matter of law, vitiated by the lack of equality, but rather whether justice requires that a distinction be drawn between freely negotiated contracts and standard form contracts, particularly where there is a lack of equality. 22 Int'l & Comp.L.Q. at 338.

6. For example, conduct which does not rise to the level of unconscionability as a matter of contract law may well warrant consideration under the "inequality" or "overweening bargaining power" element of the reasonableness test. *See, e. g.,* n. 5 *supra.*

West Germany as the forum within which I must submit all controversies" (*id.* at ¶ 6) and that "[h]ad I known this, I would not have agreed to the same, as such an obligation is onerous and unconscionable, and a deterrent to bringing any actions whatsoever." (*Id.* at ¶ 7). (The latter allegation goes, of course, to the "reasonableness" standard.) We find that in making the foregoing assertions, Gaskin flies in the face of well settled contract law principles and has failed to sustain his burden under the first test discussed above.

■■ It is a settled proposition of contract law in this state and nation that

> the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. (Citation omitted). If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him.

Pimpinello v. Swift & Co., 253 N.Y. 159, 162–63, 170 N.E. 530, 531 (1930). Elsewhere the rule has been stated in these terms:

> It has often been held that when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them, and there can be no evidence for the jury as to his understanding of its terms.

Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416, 125 N.E. 814, 816 (1920). *Accord,* Elston v. Shell Oil Co., 376 F.Supp. 968, 971 (E.D.La.1973), aff'd mem., 495 F.2d 1371 (5 Cir. 1974); Humble Oil & Refining Co. v. Jaybert Esso Service Station, Inc., 30 A.D.2d 952, 294 N.Y.S.2d 190 (1st Dept. 1968); White v. Idsardi, 253 App.Div. 96, 300 N.Y.S. 1239, 1244 (4th Dept. 1937); Radelman v. Manufacturers Hanover Trust Co., 61 Misc.2d 669, 306 N.Y.S.2d 638 (App.T.1969); Harwood v. Lincoln Square Apartments Section 5 Inc., 359 N.Y.S.2d 387, 390 (Civ.Ct.1974); 9 N.Y.Jur.Contracts § 59 at 591–92 (1959 and Supp.1974). *See generally,* 13 S. Williston, Law of Contracts § 1577 (3 ed. W. Jaeger 1970 and Supp.1974); 3 A. Corbin, Corbin on Contracts § 607 at 656–69 (Rev.1961 and Supp.1971); Calamari, Duty to Read— A Changing Concept, 43 Fordham L. Rev. 341 (1974); Comment, "No Hablo Ingles", 11 San Diego L.Rev. 415 (1974).

■ With respect to this particular plaintiff, who alleges ignorance of the German language, certain statements of Professor Calamari which are contained in his recent article are to be noted.

> A good and recurring illustration of the problem involves a person who is blind, illiterate or *unfamiliar with the language in which the contract is written* and who has signed a document which was not read to him. There is all but unanimous agreement that he is bound by the general rule previously stated. Therefore, except possibly in the case of an emergency, he must protect himself by procuring someone to read it for him. However, if the other party deceives him as to its contents, the problem is the one discussed above—the effect of fraud on a failure to read. Most of the cases have held that such a contract may at least be avoided. (Emphasis added).

Calamari, *supra,* 43 Fordham L.Rev. at 346–47. *See also,* Pimpinello v. Swift & Co., *supra;* 3 A. Corbin, *supra,* § 607 at 666–69; 9 N.Y.Jur.Contracts § 59 at 592; Comment, *supra,* 11 San Diego L. Rev. at 415–22. While Mr. Gaskin's apparent "blissful ignorance" with regard

to the contract under which he was to render his labors to the defendant strikes us as highly incredible as a matter of common sense, we take note of certain facts which are relevant to the disposition of this matter. It must be remembered that Mr. Gaskin is not an ignorant consumer, unlearned in the language of the contract, who has become entangled in the web of a contract of adhesion through the overreaching or other unconscionable practices of the defendant. The contract at bar does not involve the credit sale of a refrigerator or color television set, but rather compensation of some $36,000 per annum for Mr. Gaskin's services as the manager in charge of the defendant's New York operations which were to be conducted under the name Stumm Trading Company. *Cf.*, Jefferson Credit Corp. v. Marcano, 60 Misc.2d 138, 302 N.Y.S.2d 390, 393–94 (Civ.Ct.1969); Frostifresh Corp. v. Reynoso, 52 Misc.2d 26, 274 N.Y.S.2d 757 (Dist.Ct.1966), rev'd on other grounds, 54 Misc.2d 119, 281 N.Y.S.2d 964 (App.T.1967); Calamari, *supra*, 43 Fordham L.Rev. 351–58; Comment, *supra*, 11 San Diego L.Rev. at 438–44.[7] His office (Park Avenue, New York City) is not located in an area which would have precluded his easy access to a competent translation of the involved document. There existed no emergency condition or other exceptional circumstances at the time plaintiff entered into this contract; conditions which might now serve to excuse his present plight. Mr. Gaskin has advanced no evidence to support a finding that the contract sued upon is other than one which was fairly negotiated at arm's length and in a businesslike fashion between the parties and voluntarily entered into by him in the hope of reaping a great economic benefit. While the allegations advanced by plaintiff seem to suggest a sort of fraud and other overreaching, they plainly fail to reach the level of a claim or defense under those doctrines.[8] *See generally*, Pimpinello v. Swift & Co., 253 N.Y. at 163–65, 170 N.E. 530; 3 A. Corbin, *supra* § 607 at 666–69; Calamari, *supra*, 43 Fordham L.Rev. at 345–49; Comment, *supra*, 11 San Diego L.Rev. at 427–29.[9]

Thus, we find that the instant transaction was a commercial arrangement of a nature which warranted the exercise of care by Mr. Gaskin before his entry into it and that his conduct with regard to this undertaking can only be characterized as negligent, the consequences of which he must now bear. "[A] person will not be allowed to disaffirm a contract by simply contending that it was not read to him and that he did not understand its provisions." Comment, *supra*, 11 San Diego L.Rev. at 418.[10] As the Appellate Division, Fourth Depart-

7. As the Comment, *supra*, states:
   "When one is confronted with a situation where fraud is not provable nor is a lack of mutual consent present, the doctrines of adhesion contracts and unconscionability can be utilized."
   11 San Diego L.Rev. at 438.

8. Had plaintiff advanced matters of evidentiary substance on this motion (i. e., the name of the translator and the circumstances surrounding the translation, the number and manner of demands upon the defendant for an English copy of the contract, and what, if any, *independent* efforts were exerted by him to secure a full and complete understanding of the significant agreement into which he was about to enter), rather than the conclusory, self-serving statements contained in his affidavit, then, perhaps, a hearing would have been appropriate with regard to Mr. Gaskin's allega-

tions. *Cf.*, Fed.R.Civ.P. 9(b) ("In all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity.").

9. As the recent San Diego Law Review comment points out, "while it is a general rule that a person, if unable to read a contract, is under a duty to obtain the services of another to read it to him, the duty is excused where failure to comply is a result of the other party's fraud." However, such "fraud must be shown to exist by clear and convincing evidence. The presumption that lies in favor of honesty and fair dealing necessitates the degree of proof." 11 San Diego L.Rev. at 429 (footnotes omitted).

10. *Compare* Professor Calamari's conclusion regarding a changing "duty to read" in the adhesion contract situation. 43 Fordham L. Rev. at 360–62.

ment has stated in another context, the thrust of which is equally pertinent on these facts:

> The defendants were not ignorant men, unaccustomed to transact business; they were directors of a bank, and men of affairs in the community in which they lived. It sounds ill in the mouth of such persons to claim that they are not bound by the terms of an agreement which they voluntarily signed, because it contains a provision which they now claim they did not intend to assent to, when their predicament is due entirely to their unexcusable failure to read the document.

White v. Idsardi, 300 N.Y.S. at 1244. We find that the general rule which is stated *supra* p. 366 is wholly applicable in the instant case and, therefore, we conclude that the forum selection clause contained in the parties' August 1973 agreement can not now be avoided by plaintiff under the first test stated above for the reasons he suggests.

The forum selection clause, thus, being enforceable as a matter of contract law, we must turn to consider whether or not it may likewise be sustained as a matter of private international law on reasonableness grounds. We find such enforcement fully warranted.

■ While, "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision" (*Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916), Gaskin makes no public policy argument here and none is perceived by the Court to exist on these facts. Nor have any contentions been raised concerning the availability of appropriate remedies in the German forum, the applicable law or the conduct of the parties, *i.e.*, waiver, motive and the like. Thus, our inquiry into the reasonableness of enforcement resolves itself into the three remaining factors contained in the Collins formulation, *supra* p. 365: inequality, injustice and inconvenience.

■ Addressing itself to the element of inconvenience, the Court in *Bremen* stated:

> Courts have also suggested that a forum clause, even though it is freely bargained for and contravenes no important public policy of the forum, may nevertheless be "unreasonable" and unenforceable if the chosen forum is *seriously* inconvenient for the trial of the action. Of course, where it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable. We are not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum. In such a case, the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause. The remoteness of the forum might suggest that the agreement was an adhesive one, or that the parties did not have the particular controversy in mind when they made their agreement; yet even there the party claiming should bear a heavy burden of proof. Similarly, selection of a remote forum to apply differing foreign law to an essentially American controversy might contravene an important public policy of the forum. (Footnote omitted).

407 U.S. at 16–17, 92 S.Ct. at 1916. The Chief Justice recognized, however, that

> it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum

will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

407 U.S. at 18, 92 S.Ct. at 1917. Only when a ·resisting party demonstrates that he will "be effectively deprived of [his] day in court" (*id.*) because of the inability or expense of transporting witnesses to the foreign forum or for other good cause, will he be found to have sustained his burden of showing that the contractual forum is "manifestly ·and gravely inconvenient." 407 U.S. at 19, 92 S.Ct. 1907.[11]

■■■ In the instant case, we find that Mr. Gaskin has failed to make the requisite showing of inconvenience. This dispute, which goes to the heart of the contract at bar, can not be considered as being beyond the contemplation of the forum clause. Additionally, the matter here in controversy concerns a sizeable sum of money, even in our present economy, (the claims asserted in the complaint aggregate some $306,260.-40 with interest from October 4, 1974) and we do not doubt that if it is possessed of the slightest merit this case will be pursued in the selected forum. *Cf.,* Fireman's Fund American Ins. Cos.

v. Puerto Rican Forwarding Co., 492 F. 2d at 1297. The costs of transporting witnesses to Germany are certainly not prohibitive, especially when viewed with regard to the recovery being sought.[12] In sum, we find that resort to the German forum will not be "so manifestly and gravely inconvenient to [Gaskin] that [he] will be effectively deprived of a meaningful day in court." 407 U.S. at 19, 92 S.Ct. at 1918.

■■■ Is inequality or injustice presented on these facts? We think not. Plaintiff has advanced nothing to show that the forum clause was the product of "overweening bargaining power" or "an adhesive contract." There is no proof which would contradict a finding that "[t]he choice of . . . forum was made in an arm's-length negotiation by experienced and sophisticated businessmen . . . ." 407 U.S. at 12, 92 S.Ct. at 1914. True plaintiff alleges that he was unaware of the clause at the time when he executed the contract and that had he known of it, he "would not have agreed to [the term], as such an obligation is onerous and unconscionable, and a deterrent to bringing any actions whatsoever." (Gaskin Affidavit at ¶ 7). Equally true, however, is the proposition discussed above that such allegations do not vitiate the clause as an enforceable con-

11. The Columbia Note discusses the concept of inconvenience in these terms :
> The considerations which would lead to a judicial determination under the modern approach to forum selection that a jurisdictional agreement should not be enforced because it would be "unfair or unreasonable" to do so have yet to be fully outlined by the courts. A 1965 state court opinion [Central Contracting Co. v. C. E. Youngdahl & Co., 418 Pa. 122, 133, 209 A.2d 810 (1965)] has said, "Such an agreement is unreasonable only where its enforcement would, under all circumstances existing at the time of the litigation, seriously impair plaintiff's ability to pursue his cause of action. Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received . . . consideration. . . . "

> Proof that the chosen forum was a seriously inconvenient one for trial of the cause of action would appear to be another major defense. Similarly, lack of reasonable contact between the subject matter of the case and the chosen forum which might to an unreasonable degree prejudicially affect a party's ability to assemble witnesses and evidence has been suggested as a defense.

11 Colum.J.Transnat'l L. at 454–55 (footnotes omitted).

12. Depending upon the time of year involved, round trip airfare from New York to Berlin presently ranges from $668 to $858.

tract. Whatever "injustice" Mr. Gaskin may now suffer is the product of his own negligent and careless conduct. This is not the sort of injustice which the Court must guard suitors against. Evidence that plaintiff could not get a fair trial in Germany would present "injustice" which would require that the forum selection clause be overridden, but not one's own negligence. *See,* Collins, *supra* n. 2., 22 Int'l & Comp.L.Q. at 340.

■ Would it not do the defendant an injustice to compel it to litigate in this forum? Would it not be inconvenienced and put to additional expense? Perhaps it would not have entered into this contract had the forum clause not been included. Should it be compelled to subject itself to the fortuitous circumstance of jurisdiction *quasi in rem?* Manifestly

> "much uncertainty and possibly great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place [where personal or *in rem* jurisdiction might be established]. The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting."

Scherk v. Alberto-Culver Co., 417 U.S. at 518, 94 S.Ct. at 2457. The defendant's *legitimate expectations* are plainly matters of vital concern to the Court. Justice is a two-way street. In sum, as the Supreme Court most recently stated:

> A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indis-

pensable *precondition to achievement* of the orderliness and predictability essential to any international business transaction

which should not be cast aside absent a strong showing of compelling and countervailing reasons. Scherk v. Alberto-Culver Co., 417 U.S. at 516, 94 S.Ct. at 2455 (footnote omitted).

In our view, the plaintiff has failed to advance any "compelling and countervailing reason" against the enforcement of the forum selection clause. He has failed to sustain his burden under either the "invalidity" or the "reasonableness" test. At best, he asks that we, in the exercise of our discretion, excuse his negligent and careless conduct with total disregard of the defendant's legitimate expectations. This is unwarranted and would, in our view, be truly unreasonable and unjust.

Accordingly, we conclude that our discretion is most soundly exercised in favor of giving full effect and enforcement to the forum selection clause which is contained in the parties' August 1973 contract. We, therefore, decline to exercise our jurisdiction over this cause in deference to the contractual forum. An order dismissing this action will be entered.

The motion to dismiss this action is hereby granted. Settle an order on notice providing for: (a) the dismissal of this cause; (b) the vacatur of the order of attachment issued by the New York Supreme Court on October 31, 1974; and (c) all legal costs and damages sustained by the defendant as the consequence of said attachment as provided for in CPLR 6212(b). The parties are directed to submit with said order appropriate proofs of the costs and damages specified therein.