Jimmy **CRUISE** and Mary Doolittle, Plaintiffs,

v.

**CASTLETON, INC.** and United States Trotting Association, Defendants.

**No. 77 Civ. 5855 (RLC).**

United States District Court, S. D. New York.

May 3, 1978.

---

Greco & Faraldo, Kew Gardens, N.Y., for plaintiffs; Joseph A. Faraldo, Kew Gardens, N.Y., of counsel.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for defendant Castleton, Inc.; James M. Bergen, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant United States Trotting Association; A. Vernon Carnahan, Robert L. Magielnicki, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant United States Trotting Association ("USTA") moves to dismiss for lack of venue. F.R.Civ.P. 12(b)(3).[1] The basis for the motion is that plaintiffs are members of the USTA, and Article I, § 7 of the USTA's By-Laws provides, in its entirety:

"Every applicant for membership and every member shall be confined in any action at law or in equity against this Association to the jurisdiction of the courts, Federal or State, within which the principal office of the Association is situated."

The principal office of the USTA is in Columbus, Ohio, in the Southern District of Ohio.

*Facts*

The plaintiffs, New York residents, own, train and race horses. Defendant Castleton is also involved in many aspects of the horse racing business, including the operation of farms where it boards and cares for the horses of other owners. Defendant USTA is a not-for-profit membership corporation. Its purposes are

"to improve the breed of trotting and pacing horses and promote the best interests of harness racing in the United States. USTA's activities include compiling and maintaining extensive and comprehensive breeding, registration and performance records of the standard race horse, and adopting racing rules and standards of competence for participants in the sport of harness racing."[2]

In furtherance of these goals and activities, the USTA operates a tattoo identification program, whereby members of the Association can have their horses tattooed with a USTA registration number so that there can be no dispute as to the identity and ownership of the horse in question.

This suit, brought under diversity jurisdiction, concerns the accidental switching and misidentification of two horses. According to the complaint, a filly of plaintiffs named Singh was boarded at one of Castleton's farms in Kentucky beginning in June, 1975. It is alleged that sometime thereafter, Castleton negligently mislabeled Singh with the name of another horse called Dream Renevaeh, also in Castleton's possession at that time, thereby switching the identity of these two horses. Around December, 1976, Castleton gave Dream Renevaeh, under the name "Singh," to plaintiffs and gave Singh, then tagged "Dream Renevaeh," to the owners of Dream Renevaeh. It is further alleged that in April, 1977, the USTA negligently tattooed Dream Renevaeh's registered identification number on

---

1. *See* note 6, *infra.*

2. Affidavit of Edward Hackett, Executive Vice President of the USTA.

Singh, completing and solidifying the name switch. Plaintiffs claim that following the discovery of the switch they were compelled to purchase Dream Renevaeh from its proper owner, and that because Singh was tattooed with the wrong identification number it was disqualified from competition, all to the detriment of plaintiffs.

*Discussion*

The sole ground for USTA's motion to dismiss is that a USTA by-law provides, in effect, that a suit by a member against the USTA can only be brought in Ohio. Plaintiffs argue initially that the by-law is inapplicable to the instant suit because the by-law should be construed to extend only to actions brought "pursuant to" the by-laws themselves, and not to tort actions between members and the Association.

The gist of plaintiffs' argument is that it would be unreasonable to read the by-law in question literally and apply it to "all conceivable litigation between members and the Association." However, whatever the merits of this position as a general proposition, it is not tested in this case, for a fair reading of the provision is that it *was* intended to encompass suits which arise out of the membership relationship or the official activities of the USTA. The present suit against the USTA concerns the allegedly negligent tattooing of a horse by the Association. The tattooing program is an official function of the USTA, and the right to have one's horse tattooed is a privilege available only to members of the USTA. Regardless of whether it can be said that this suit is brought "pursuant to" the by-laws, it is within the scope of the forum-selection provision at issue here.

In *Wm. H. Muller & Co. v. Swedish American Line Ltd.*, 224 F.2d 806 (2 Cir.), *cert. denied*, 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955),[3] a suit in admiralty, the Second Circuit held that the enforceability of a forum-selection clause "depends upon its reasonableness. . . . [If] the agreement is not unreasonable in the setting of the particular case, [the court] may properly decline jurisdiction and relegate a litigant to the forum to which he assented." *Id.* at 808. In *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court adopted the *Muller* approach toward such clauses and expanded upon it. The Court there held that, at least in admiralty suits, forum-selection clauses "are prima facie valid," *id.* at 10, 92 S.Ct. 1907, and should be enforced unless the party resisting application of the clause can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916. While both *Muller* and *Bremen* concerned international maritime agreements, where the argument for enforcing a choice of forum clause is especially cogent, *see The Bremen v. Zapata Off-Shore Co., supra*, 407 U.S. at 12–14, 92 S.Ct. 1907, the "reasonableness" test that those cases propound is also applicable in purely domestic cases. *See, e.g., Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341 (3d Cir. 1966); *Jack Winter, Inc. v. Koratron Co.*, 326 F.Supp. 121 (N.D.Cal. 1971).

Under *Bremen*, the party resisting enforcement has the burden of establishing that, "notwithstanding its *prima facie* validity, the forum clause should not be enforced." *Gaskin v. Stumm Handel GmbH*, 390 F.Supp. 361, 364 (S.D.N.Y.1975) (Cannella, J.). And the burden so placed on the resister is to show either that under the ordinary principles of contract law the clause is voidable for reasons such as fraud or overreaching, or that enforcement of the forum clause which is valid as a matter of contract law would, under the particular

---

**3.** "The *Muller* case was overruled in *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200 (CA2 1967), insofar as it held that the forum clause was not inconsistent with the 'lessening of liability' provision of the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(8), which was applicable to the transactions in *Muller* [and] *Indussa* . . . . . That Act is not applicable in this case." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 n.11, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972).

circumstances of the case, be unreasonable and unjust. *Ibid.*

 It is far from clear, however, whether a court sitting in diversity should follow the *Bremen* approach towards forum-selection clauses or whether, by virtue of the *Erie* doctrine, it must apply state law on this question. The issue is a complex one, *Matthiessen v. National Trailer Convoy, Inc.*, 294 F.Supp. 1132, 1134 n.3 (D.Minn.1968), about which "it would probably be possible to write at length . . ." *Geiger v. Keilani*, 270 F.Supp. 761, 765 (E.D. Mich.1967).[4] The issue need not be reached in this case, however, for, if *Erie* does mandate the application of state law with regard to forum-selection provisions, the state law that would govern here—New York law [5]—is in substantial conformity with the federal approach of *Bremen* and would lead to the same result. Since there is no significant difference between the federal and state rule, it is not necessary to choose between them. *See Central Contracting Co. v. Maryland Casualty Co., supra,* 367 F.2d at 344–45.

The New York Court of Appeals does not appear to have addressed the question of the enforceability of choice of forum clauses; there are, however, several lower court opinions on the issue. In 1961, the Fourth Department of the Appellate Division held that the precise by-law at issue here was unenforceable on the grounds that "a contract . . . which attempts to confer

4. It does not appear that any court has undertaken that task. Nor does a consistent pattern emerge from the reported decisions. At least two courts have held that state law applies on this issue, *Davis v. Pro Basketball, Inc.*, 381 F.Supp. 1 (S.D.N.Y.1974) (MacMahon, J.); *Lev v. Aamco Automatic Transmission, Inc.*, 289 F.Supp. 669 (E.D.N.Y.1968), and one court assumed without discussion that state law controlled. *Leasewell, Ltd. v. Jake Shelton Ford, Inc.*, 423 F.Supp. 1011 (S.D.W.Va.1976). On the other hand, *St. Paul Fire & Marine Insurance Co. v. Travelers Indemnity Co.*, 401 F.Supp. 927 (D.Mass.1975), adopted the *Bremen* approach without reference to state law, and *Gaskin v. Stumm Handel GmbH*, 390 F.Supp. 361 (S.D.N.Y.1975) (Cannella, J.), while noting the similarity between the applicable state law and the federal rule, held that the criteria set forth in *Bremen* governed the enforceability of choice of forum clauses. *See also In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 234 n.24 (6th Cir. 1972).

5. Although the events at issue in this suit occurred in states other than New York, New York law would be controlling on the instant question. When a federal court which is required to apply substantive state law by *Erie* is confronted with an initial choice of law problem, the court is similarly required to apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Loebig v. Larucci*, 572 F.2d 81, 84 (2d Cir. 1978). New York's choice of law approach is to apply "the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented." *Babcock v. Johnson*, 12 N.Y.2d 473, 484, 240 N.Y.S.2d 743, 752, 191 N.E.2d 279 (1963). *See Loebig v. Larucci, supra.* In determining which jurisdiction's interest is paramount, a New York court will look to the policy or policies which underlie the conflicting rules vying for adoption. *See Babcock v. Johnson, supra.*

The issue here is whether the forum court should honor or disregard the parties' commitment to litigate this case elsewhere. In the circumstances of this case, the only state that has an interest in the resolution of this issue is New York.

As discussed in the text of this opinion, the New York rule with regard to forum selection clauses is that they should be enforced if, under the circumstances, it is reasonable to do so, and application of New York law in this case would result in enforcement of the clause. Other states may, as did New York at one time, refuse to enforce such clauses "on the ground that they [are] 'contrary to public policy' or that their effect [is] to 'oust the jurisdiction' of the court." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). Assuming for purposes of this inquiry that other states having an interest in this suit, such as Ohio and Kentucky, follow this latter approach and would refuse to enforce such forum clauses, it is nonetheless clear that no policy or interest of a sister state would be denigrated if New York, applying its law, refused to exercise its jurisdiction in this case and relegated the litigants to courts in another state. No public policy of, say, Ohio would be violated because New York honors such clauses, nor is the jurisdictional integrity of the Ohio courts implicated in any way when a New York court closes its doors to a litigant. Thus, upon analysis, since New York would give effect to this forum clause, there can be no real conflict between the laws of the several states on this issue. Under New York's choice of law rules, the New York rule on forum clauses would govern here.

exclusive jurisdiction upon the courts of another state . . . to the exclusion of the New York courts will be declared void as against public policy." *Kyler v. United States Trotting Association,* 12 A.D.2d 874, 210 N.Y.S.2d 25, 26–27. The *Kyler* rule was followed and applied in *Arsenis v. Atlantic Tankers Ltd.,* 39 Misc.2d 124, 240 N.Y.S.2d 69 (Civ.Ct. N.Y. County 1963). But since 1963, the New York courts, perhaps influenced by the general trend towards acceptance of the validity of forum clauses, have themselves been much more accepting of such provisions. In 1966, the First Department departed radically from the *Kyler* rule.

"Although we may not be required to give effect to a contractual provision which ousts our courts from jurisdiction [citing, *inter alia,* to *Kyler*], we are not precluded from enforcing it where it would be right and proper so to do. . .

There is an increasing disposition on the part of courts to recognize the existence of . . . exceptional circumstances and to give effect to it. Instead of the contract stipulation being unenforceable, whether it should be enforced is now a matter resting in the sound discretion of the court . . .,"

citing to *Wm. H. Muller & Co. v. Swedish American Lines Ltd., supra. Export Insurance Co. v. Mitsui Steamship Co.,* 26 A.D.2d 436, 274 N.Y.S.2d 977, 980. Under *Mitsui,* the court should exercise its discretion if "the circumstances . . . clearly indicate that fairness and convenience dictate that our courts yield to the foreign jurisdiction." 274 N.Y.S.2d at 981. And in 1969, the Fourth Department, while declining to enforce a forum agreement since it was by its terms inapplicable to the suit at hand, also said that enforcement of such clauses was a discretionary question for the court; the court did not reiterate the position it had earlier taken in *Kyler. Hodom v. Stearns,* 32 A.D.2d 234, 301 N.Y.S.2d 146.

There do not appear to be any New York cases after *Hodom* which speak to this issue, but *Mitsui* and *Hodom* do indicate that in the late 1960's, New York was reevaluat-ing and liberalizing its attitude towards forum clauses. Indeed, on the basis of *Mitsui* and *Hodom,* this court has concluded that "the New York courts now march to a tune like that played by the Court in *Bremen* and leave the 'enforcement of a forum selection clause to the sound discretion of the court.'" *Gaskin v. Stumm Handel GmbH, supra,* 390 F.Supp. at 364, *quoting Davis v. Pro Basketball, Inc.,* 381 F.Supp. 1, 3 (S.D. N.Y.1974) (MacMahon, J.). I must agree, for while the *Mitsui* approach differs from *Bremen's* to the extent that *Mitsui* requires that the circumstances "clearly indicate" that enforcement would be appropriate, *Mitsui* also preceded *Bremen* and the host of other cases indicating increased judicial acceptance of these provisions. Under these circumstances, I believe that if the issue were to arise in a New York court today, that court would continue the evolution of New York's law begun in *Mitsui* and adopt the approach articulated in *Bremen. See Leasewell, Ltd. v. Jake Shelton Ford, Inc.,* 423 F.Supp. 1011, 1014–15 (S.D.W.Va. 1976); *Matthiessen v. National Trailer Convoy, Inc., supra,* 294 F.Supp. at 1134–35; *Geiger v. Keilani, supra,* 270 F.Supp. at 765–66.

■ Under the *Bremen* approach, USTA's by-law should be enforced here. In the context of the facts of this case, the forum provision is neither unreasonable nor unjust. The defendant USTA and its records are located in Ohio, the chosen forum. Most if not all of the events with which this suit is concerned occurred in Ohio or nearby states—Kentucky and Illinois. Defendant Castleton maintains its principal place of business in Kentucky. Indeed, this suit appears to have no connection to any forum outside these three midwestern states other than the fact that the plaintiffs reside in New York. There may be no one "most" convenient forum for this suit, but Ohio is certainly not an unreasonable selection. Nor does it appear that litigation in Ohio would be so inconvenient that as a practical matter plaintiffs would be unable to litigate their claim there. Plaintiffs appear to be business persons of not insignificant means,

and, as the facts of this case demonstrate, are not unaccustomed to transacting business in distant states.

Nor can it be said that this by-law is arbitrary and designed simply to discourage litigation against the USTA. No doubt, the localization of suits by members against the USTA was intended to reduce the USTA's litigation costs—expenses that would ultimately be borne by the members—and selection for this purpose of the forum in which the membership corporation is headquartered is eminently reasonable. And, as discussed above, the choice of an Ohio forum is particularly appropriate.

 Plaintiffs argue, however, that despite the fact that the constitution and by-laws of a membership organization are considered to be binding contracts between the members, see, e.g., Talton v. Behncke, 199 F.2d 471, 473 (7th Cir. 1952); Riko Enterprises, Inc. v. Seattle Supersonics Corp., 357 F.Supp. 521, 524 (S.D.N.Y.1973) (Tenney, J.); Pharmacists & Retail Drug Store Employees Union, Local 330 v. Lake Hills Drug Co., 255 F.Supp. 910, 912 (W.D. Wash.1964), and that the members' knowledge of the constitution and by-laws is presumed, see, e.g., Talton v. Behncke, supra, at 473; Pharmacists & Retail Drug Store Employees Union, Local 330 v. Lake Hills Drug Co., supra, at 912, the forum by-law of the USTA is nonetheless unenforceable. Plaintiffs assert that the USTA has successfully achieved its goal of regulating the entire harness racing industry, and that by virtue of its control of the sport, membership in the USTA is, practically speaking, compulsory for all who wish to compete in the United States and Canada. Thus, plaintiffs argue, the forum clause is in reality part of a "contract of adhesion" to which they did not freely assent. But, even assuming the accuracy of their description of the USTA's power, plaintiffs' contention that the by-law is thus unenforceable as a matter of contract law, see Gaskin v. Stumm Handel GmbH, supra, cannot be accepted. This is not a situation where the court is asked to enforce a highly prejudicial term in a contract between two parties

of significantly different bargaining power, which term is to the benefit of the stronger and the detriment of the weaker. Plaintiffs have entered into a contract with their fellow members, who adopted the instant by-law for their mutual benefit. Collectively, they retain the power to change it. Cases concerning overwhelming bargaining power in a commercial context are simply inapposite. Moreover, plaintiffs' argument proves too much, for it would vitiate every by-law of a host of membership associations.

Nor can I agree that the circumstance that plaintiffs' membership in the USTA is in some sense involuntary renders enforcement of the forum provision in this case unreasonable or unjust. See Gaskin v. Stumm Handel GmbH, supra. While that circumstance is certainly relevant to this determination, it is not significant here, for, as discussed above, Ohio may in fact be the best place to litigate this suit.

 It should be noted that the forum provision would not be enforced in this case if co-defendant Castleton were not also subject to suit in Ohio, for it would be both unreasonable and unjust, and wasteful of judicial resources, to force plaintiff to pursue two suits where only one is necessary. However, by its attorney's affidavit, Castleton has averred that it does substantial business in Ohio, including the racing of horses every year at a race track "outside of Columbus;" that there would be jurisdiction over Castleton in Ohio; that Castleton "can be sued in Ohio;" and that "it would be more appropriate that this action be brought there." I rely on these statements in deciding to enforce USTA's by-law. In any case, having taken this position here, Castleton is now estopped from objecting to personal jurisdiction and venue when this action proceeds in Ohio.

However, while Article I, § 7 of the USTA's By-Laws ought be given effect in this case, it is not necessary to dismiss this action, as the USTA requests, for this court has the power to transfer this action direct-

ly to the appropriate forum,[6] thus avoiding the possibility that outright dismissal might prejudice plaintiffs' rights. Consequently, this case is transferred to the District Court of the Southern District of Ohio.

IT IS SO ORDERED.

---

**6.** 28 U.S.C. §§ 1404(a), 1406(a). If the forum provision makes venue improper in this district, the power to transfer rather than dismiss is granted by § 1406(a). It is unnecessary, however, to decide whether the forum by-law creates a defect in venue in this district, for even if reliance on § 1406(a) is unfounded, it is "in the interest of justice" to honor the parties' choice of forum and to transfer this case, making § 1404(a) applicable.

Under either provision, however, transfer can only be made to a district where the action "might have" or "could have" been brought originally—that is, where jurisdiction over the defendants can be obtained and where venue is proper. There is jurisdiction in Ohio over both defendants, as indicated in the text of the opinion. In a diversity case, venue will lie in the district where "all defendants reside," 28 U.S.C. § 1391(a), and for venue purposes a corporation resides in "any judicial district in which it . . . is doing business." 28 U.S.C. § 1391(c). The USTA clearly does business in the Southern District of Ohio because its principal place of business is in Columbus, and it appears from Castleton's assertions regarding its business activities in Ohio that Castleton "does business" in that District as well.